IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LISA EVANS and DENISE STARKS, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>CAREGIVERS, INC., and ROBERT DEBLASIO, individually,<br><br>Defendants. | Case No. 3:17-cv-0402<br>Judge Aleta A. Trauger |

## MEMORANDUM

Before the court are (1) Plaintiffs' Motion for Conditional Certification, Approval of 29 U.S.C. § 216(b) Notice and Consent Forms, and to Order Disclosure of Contact Information for Current and Former Employees (Doc. No. 18); and (2) Defendants' Motion to Dismiss First Amended Complaint (Doc. No. 21). As set forth herein, the court will deny the defendants' motion and grant the plaintiffs'.

**I.      Motion to Dismiss**

The plaintiffs were formerly employed by defendants Caregivers, Inc. and Robert DeBlasio (referred to hereinafter, collectively, as "Caregivers"). Caregivers is a home care staffing company that employs and places "caregivers" in private homes throughout the Middle Tennessee area to provide "lifestyle support" services for the aged and disabled, including assistance with dressing and bathing, light housekeeping, shopping, errands, meal preparation, assistance with medical appointments and medications, and other services. (Am. Compl., Doc. No. 16 ¶ 14.) The plaintiffs allege that Caregivers failed to pay them and other similarly situated

employees overtime pay as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, beginning January 1, 2015.

In its motion, Caregivers argues that the rule amending FLSA regulations to remove the overtime-pay exemption for home health aides employed by third parties did not go into effect until November 12, 2015 or, at the earliest, October 13, 2015. It argues on that basis that the claims brought by plaintiff Starks, whose employment terminated on September 11, 2015, must be dismissed in their entirety. Caregivers further argues that plaintiff Evans' employment terminated on February 26, 2015, such that her claims for overtime pay are limited to the three-month period between November 12, 2015 and February 26, 2016.

### A. Background

The FLSA requires covered employers to pay their employees overtime wages at one and one-half times an employee's normal hourly rate for hours worked over 40 in a week. 29 U.S.C. § 207. For any violation, the Act authorizes an aggrieved employee to bring a collective action on behalf of herself and "other employees similarly situated." *See id.* § 216(b). The Act also contains numerous exemptions from its wage and hour requirements. In 1975, Congress enacted amendments to the FLSA that exempted from the Act's overtime provisions those employees engaged in "companionship services," that is, persons "employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves." *Id.* § 213(a)(15). The regulations that accompanied this provision, for a long time, specified that the exemptions cover companions and live-in domestic service workers who are "employed by an employer or agency other than the family or household using their services," as well as those employed directly by the family. 40 Fed. Reg.

7407. *See also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007) (concluding that the rule exempting domestic companions employed by third parties was valid and binding).

In October 2013, the Department of Labor issued a final rule amending its regulations to preclude third-party employers like Caregivers from claiming the companionship services exemption. *See* 29 C.F.R. § 552.109(a) ("Third party employers of employees engaged in companionship services . . . may not avail themselves of the . . . overtime exemption."). This new rule was to become effective January 1, 2015. *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 (Oct. 1, 2013) (codified at 29 C.F.R. pt. 552).

On December 22, 2014—before the planned January 1, 2015 effective date—the United States District Court for the District of Columbia issued an opinion holding that the Department of Labor had exceeded its rule-making authority and vacating the rule as applied to third-party employers. *Home Care Ass'n of Am. V. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014). On August 21, 2015, the Court of Appeals for the District of Columbia reversed the district court's vacatur. *Home Care Ass'n of Am. V. Weil*, 799 F.3d 1084 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2506 (2016). After the circuit court's decision, the Department of Labor issued guidance stating that it would not institute enforcement proceedings for violations of the amended regulations until 30 days after the Court of Appeals issued a mandate making its opinion effective, which the appellate court subsequently did on October 13, 2015. *See* Application of the Fair Labor Standards Act to Domestic Service: Announcement of 30-Day Period of Non-Enforcement, 80 Fed. Reg. 55,029-01, 2015 WL 5309094 (Sept. 14, 2015). The Department of Labor began enforcing the amended regulations on November 12, 2015. *See* Application of the Fair Labor Standards Act to Domestic Service: Dates of Previously Announced 30-Day Period of Non-Enforcement, 80 Fed. Reg. 65,646-01, 2015 WL 6447714 (Oct. 27, 2015).

## B. Discussion

For purposes of the Motion to Dismiss, Caregivers does not dispute that it is a "covered employer"; that the plaintiffs provided companionship services; that they worked more than 40 hours per week on occasion; and that, under the amended regulations, the plaintiffs are no longer exempt employees. The parties dispute only the effective date of the new rule.

To date, no circuit court of appeals has addressed the issue, and the district courts are somewhat split on whether the effective date of the new rule is January 1, October 13, or November 12, 2015. The first decision directly confronting the question, *Bangoy v. Total Homecare Solutions, LLC*, No. 1:15-CV-573, 2015 2015 WL 12672727, at *3 (S.D. Ohio Dec. 21, 2015), granted the defendant's motion to dismiss the plaintiffs' overtime claims, finding that the D.C. Circuit's reversal of the district court opinion invalidating the new rule had no retroactive effect and, therefore, that the rule did not become enforceable until one month after the mandate issued. The court believed that the defendant was "entitled to rely" on the *Weil* district court's vacatur of the rule and that any other result would place it and other employers "in an untenable position." 2015 WL 12672727, at *3. The court further reasoned that the vacatur had the effect of rendering the rule "a nullity and unenforceable" before it ever went into effect, such that permitting a plaintiff to recover for a violation of the rule while the vacatur was in effect "would give the rule an impermissible retroactive effect." *Id.* The court also believed that the Department of Labor's decision to delay any actions to enforce the new rule until November 12, 2015 "strongly suggest[ed]" that the new rule should not be given retroactive effect in cases between private parties. *Id.*

After *Bangoy*, the District of Connecticut issued a published opinion addressing the same issue and reaching the opposite conclusion. In *Kinkead v. Humana, Inc.*, 206 F. Supp. 3d 751 (D.

Conn. 2016), the plaintiff sought overtime wages for the period of time from January to May 2015. The defendants sought dismissal on the basis that the vacatur of the rule was in effect during the entire time that the plaintiff worked in 2015. In rejecting that argument, the court reasoned as follows:

> The Administrative Procedure Act authorizes a federal court to "set aside" unlawful agency action, such as the agency's promulgation of a rule that is arbitrary or capricious, that exceeds the agency's authority or limitations under a statute, or that is otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A) & (C). This language bespeaks an authority to set aside an entire rule, not merely to preclude its enforcement in a particular case.
>
> Moreover, when a court vacates an agency's rule, such a vacatur restores the status quo before the invalid rule took effect, and the agency must initiate another rulemaking proceeding if it would seek to confront the problem anew.
>
> In light of the fact that the district court vacated the new rule, it is not surprising that defendants refrained from paying overtime to plaintiff while the district court's decision remained valid. But, of course, the district court ruling was promptly challenged in the D.C. Circuit, and the real question here is whether the D.C. Circuit's subsequent reversal of the district court's vacatur means that defendants became liable to pay plaintiff overtime for the periods that she worked while the district court's decision had been in effect. The answer to this question follows from the well-established rule that judicial decisions are presumptively retroactive in their effect and operation. The ruling of the Supreme Court or of a federal court of appeals within its geographical jurisdiction "is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."
>
> Despite defendants' arguments that they relied on the district court's decision, any such reliance would not justify a non-retroactive application of the D.C. Circuit's ruling.
>
> Nor am I persuaded as a practical matter that defendants have any justifiable reliance interests that would warrant protection here. The DOL allowed more than a year from its promulgation of the new rule in 2013 until its effective date in 2015; defendants had ample notice of the obligations to be imposed by the new rule. Although defendants might have hoped that the district court's decision would spare them from having to pay overtime, they were doubtlessly aware of a likelihood that the D.C. Circuit would do just what appellate courts often do—reverse the decision of a district court.

*Id.* at 753–54 (quoting *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993)) (footnote and

other internal citations omitted).

Following the issuance of *Bangoy* in late 2015 and *Kinkead* in mid-2016, those district courts directly confronted with the question of the new rule's effective date have uniformly rejected *Bangoy*'s rationale, adopted that of *Kinkead*, and concluded that the rule went into effect on January 1, 2015. *See Guerrero v. Moral Home Servs., Inc.*, No. 16-23051-CIV-MORENO, 2017 WL 1155885, at *3 (S.D. Fla. Mar. 27, 2017) (noting that, "[s]ince *Bangoy*, all four district judges to analyze the issue in depth—including one judge in the same district—have concluded that the effective date is January 1, 2015. Contrary to *Bangoy*, these courts follow the well-established rule that judicial decisions are presumptively retroactive in their effect and operation." (citation and footnote omitted)); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 WL 749196 (S.D. Ohio Feb. 27, 2017) ("[T]he Court is persuaded by the totality of the circumstances to side with the growing majority of district courts that have found that the effective date of the regulations at issue is the effective date for purposes of a private suit."); *Cummings v. Bost, Inc.*, No. 2:14-CV-020902016 WL 6514103 (W.D. Ark. Nov. 1, 2016) (same); *Lewis–Ramsey v. The Evangelical Lutheran Good Samaritan Soc'y*, No. 3:16-cv-00026, 2016 WL 8454079 (S.D. Iowa Sept. 21, 2016) (same); *Collins v. DKL Ventures, LLC*, 215 F. Supp. 3d 1059 (D. Colo. 2016) (same).[1]

---

[1] The decisions cited by Caregivers in support of its contention that the effective date is *not* January 1, 2015 do not conduct any analysis of the issue, either because the effective date was not pertinent or because the parties did not dispute the effective date. *See Alves v. Affiliated Home Care of Putnam, Inc.*, No. 15-CV-1593, 2017 WL 511836, at *3 (S.D.N.Y. Feb. 8, 2017) (declaring without analysis effective date of October 13, citing Department of Labor News Release); *Wengerd v. Self-Reliance, Inc.*, No. 3:15-cv-293, 2016 WL 5661972, at *2 n.2 (S.D. Ohio Oct. 3, 2016) (where both parties cited only to the previous version of the regulations, presuming an effective date of November 12, 2015); *Jasper v. Home Health Connection, Inc.*, No. 2:16-cv-125, 2016 WL 3102226 (S.D. Ohio June 1, 2016) (where the plaintiff contended that she was due overtime pay beginning October 13, 2015, presuming without discussion that the new rule became effective on that date).

This court is likewise persuaded by the reasoning in *Kinkead* and finds that the effective date of the new rule is January 1, 2015. Caregivers' motion will therefore be denied.

## II. Motion for Conditional Certification of Collective Action

In their motion, the plaintiffs ask the court to

> (1) conditionally certify this case authorizing it to proceed as a collective action for overtime violations under the FLSA, 29 U.S.C. §216(b) on behalf of employees of Defendants who worked as caregivers (or those who performed similar duties, however titled) from January 1, 2015, through the present; (2) issue an Order directing Defendants to immediately provide a list of names, last known addresses, last known telephone numbers and email addresses for all putative class members from January 1, 2015, through the present; (3) issue an Order approving the proposed Notice and Consent forms filed as Exhibit 1 and Exhibit 2 [to the plaintiffs' motion], respectively; and (4) order that the Notice be prominently posted at Defendants' office location, attached to current employees' next scheduled paycheck, and mailed and emailed to current and former employees who worked as caregivers from January 1, 2015, through the present so those interested may assert their claims on a timely basis as part of this litigation.

(Doc. No. 18, at 1–2.) Caregivers has not filed a response to the motion, timely or otherwise, as a result of which the court finds that the motion is unopposed. L.R. 7.01(b).

### A. Collective Actions Under the FLSA

A collective action under the FLSA "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing[.]" 29 U.S.C. § 216(b). Thus, in order to join a collective action, an employee must (1) be "similarly situated" to the plaintiff who maintains the action, and (2) give his written consent to join. *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). A collective action brought under § 216(b) is distinguishable from a class action, which is governed by Federal Rule of Civil Procedure 23, in that plaintiffs in a collective action must "opt-in" rather than "opt-out" of the lawsuit. *Id.* The "opt-in" nature of the collective action "heightens the need for employees

to 'receiv[e] accurate and timely notice concerning the pendency of the collective action.'" *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 483 (S.D. Ohio 2014) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). The statute, therefore, vests in the district court the discretion to facilitate notice to potential plaintiffs "in appropriate cases[.]" *Hoffmann–La Roche*, 493 U.S. at 169.

The FLSA does not prescribe a procedure for instituting and managing a collective action against an employer. The Sixth Circuit, however, has "implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action." *Heibel v. U.S. Bank Nat'l Ass'n*, No. 2:11-CV-00593, 2012 WL 4463771, at *2 (S.D. Ohio Sept. 27, 2012) (citing *In re HCR ManorCare, Inc.*, No. 113866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011)). "The first [step] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (quotation marks and citations omitted).

At the first step, the plaintiff bears the burden of showing that the employees in the class are "similarly situated." *Id.* To satisfy this burden at the initial notice stage, the plaintiff must only "make a modest factual showing" that "his position is similar, not identical, to the positions held by the putative class members." *Id.* at 546–47 (quotation marks and citations omitted). The standard at the notice stage is "fairly lenient . . . and typically results in 'conditional certification' of a representative class." *Id.* at 547 (quotation marks and citations omitted). During this preliminary stage, a district court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011).

Regarding the initial inquiry into whether plaintiffs are similarly situated with the

proposed collective, the Sixth Circuit has observed that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585. The court in *O'Brien* also explained, however, that "[s]howing a 'unified policy' of violation is not required" to support conditional certification of a collective action. *Id.* at 584. Rather, plaintiffs may also meet the similarly situated requirement if they can demonstrate, at a minimum, that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 585.

Factors that guide a district court's consideration of conditional certification at this stage include: (1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; and, (3) whether there is evidence that defendants maintained a widespread discriminatory plan affecting those plaintiffs. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015). "Once a court determines that the potential opt-in plaintiffs are 'similarly situated' to the named plaintiffs, notice is sent, opt-in forms are filed[,] and discovery takes place." *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *2 (S.D. Ohio Feb. 26, 2015).

The second phase of the certification process begins after discovery is completed. S*truck v. PNC Bank N.A.*, No. 2:11-CV-00982, 2013 WL 571849, at *2 (S.D. Ohio Feb. 13, 2013). At this stage, the defendant may file a motion to decertify the class, and the court will revisit with greater scrutiny the question of whether the class members are actually similarly situated. *Atkinson*, 2015 WL 853234, at *3.

**B.     Conditional Certification**

In this case, the defendants have not opposed the Motion for Conditional Certification. In

any event, the court finds that the plaintiffs have met the fairly lenient standard for conditional certification by showing that the named plaintiffs are similarly situated to the potential class members. The plaintiffs' motion is supported by the Declarations of named plaintiffs Lisa Evans and Denise Starks. (Doc. Nos. 19-3, 19-4.) Evans and Starks attest that they regularly worked more than 80 hours per two-week pay period while they were employed by Caregivers, and they have submitted sample paystubs for a pay period in August 2015 in which they worked, respectively, 125 and 86 hours. (Doc. Nos. 16-1, 16-2.) They allege that, while employed by Caregivers, they observed and were aware of numerous other home care employees who worked more than forty hours per week and did not receive overtime pay. (Doc. No. 19-3 ¶ 6; Doc. No. 19-4 ¶ 6.) Further, they allege that Caregivers had "a common policy of not paying overtime pay which [it] applied to all caregivers." (Doc. No. 19-3 ¶ 7; Doc. No. 19-4 ¶ 7.) Denise Starks alleges that she asked why she was not paid overtime and was told by defendant DeBlasio that, because Caregivers was a private company, it did not have to pay overtime. (Doc. No. 19-4 ¶ 8.)

The court will therefore grant conditional certification of a collective action by a class defined as all caregivers (or those performing similar tasks, whatever their job title) presently or formerly employed by Caregivers in the Middle Tennessee area[2] for any period of time from January 1, 2015 through the present.

### C. The Opt-In Notice and Consent Form

The plaintiffs request that the court approve their proposed Notice and Consent Form, filed with their motion (Doc. Nos. 19-1, 19-2) for distribution to putative class members. "Having conditionally certified the . . . Class, the Court has the authority to supervise notice to potential plaintiffs." *Lewis v. Huntingdon Nat'l Bank*, 789 F. Supp. 2d 863, 870 (citing

---

[2] According to the Amended Complaint, Caregivers only operates within the Middle Tennessee area.

*Hoffmann–La Roche*, 493 U.S. at 172). As the plaintiffs point out, the benefits provided by the opportunity to participate in a collective action, including lower individual costs and increased judicial efficiency "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman–LaRoche*, 493 U.S. at 170. Court-approved notice, however, must not communicate to absent class members "any encouragement to join the suit or any approval of the suit on its merits." *Id.* at 169.

The plaintiff's proposed Notice and Consent Forms appear to be "timely, accurate, and informative," as required. *Id.* at 172. The proposed Notice clearly informs putative class members of their rights and how they can elect to participate in the action. The Notice provides notice of the pendency of the action; it accurately describes the plaintiffs' legal claims. It advises potential opt-ins that they are not required to participate and provides clear instructions on how to opt in. It accurately states that the employer is defending against the claims, but that retaliation and discrimination for participation in an FLSA action are prohibited by law. *See* 29 U.S.C. §215(a)(3) (anti-retaliation provision). The Notice also describes the legal effects of joining and not joining the suit and notes that the court expresses no opinion regarding the merits of the plaintiffs' claims or the defendants' liability.

The Consent Form provides that those class members interested in participating must return the Form to plaintiffs' counsel, within a specified period of time, for it to be filed with the court. The plaintiffs suggest a time frame of 90 days. This is consistent with established practice under the FLSA. *See, e.g.*, *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) ("[B]y setting a cut-off date for the receipt of consents, the court can expedite resolution of the action."); *Cranney*, 2008 WL 608639 (directing the plaintiffs to file any

additional opt-in forms within one hundred and twenty days, after which "the class will be closed and the Court will no longer accept additional opt-in consent forms").

In light of these considerations and the defendants' lack of opposition, the court will approve the proposed Notice and Consent Form and authorize the plaintiffs to distribute the forms to potential class members, as defined herein. The Notice and Consent Form must both be modified to reflect that potential class members must return the Consent Form to plaintiff's counsel within 90 days of the date that this Memorandum and accompanying Order are entered. In addition, counsel must ensure that all Consent Forms are filed with the court within 120 days of entry of this Memorandum and accompanying Order.

   **D.   Method of Notification**

In anticipation of distributing the Notice and Consent Form, the plaintiffs ask that Caregivers be required to disclose the names and last known mailing addresses, email addresses, and telephone numbers of all potential class members. They seek to provide notice by means of first-class mail and email. In addition, the plaintiffs propose that Caregivers be required to post the Notice prominently at its office location(s) and to enclose copies of the Notice and Consent Form with the next regularly scheduled paycheck for still-employed potential class members.

As noted, Caregivers has not filed a response in opposition to the plaintiffs' motion, but the court observes that courts within the Sixth Circuit have routinely approved dual notification through regular mail and email. *See, e.g.*, *Williams v. King Bee Delivery, LLC*, No. 5:15-cv-306, 2017 WL 987452, at *7 (E.D. Ky. Mar. 14, 2017); *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016). They also have required that employers post the notice at a conspicuous location in their facilities, J*owers v. NPC Int'l, Inc.*, No. 13-1036, 2016 WL 7238963, at *8 (W.D. Tenn. Dec. 13, 2016), and provide copies with employees' paychecks,

*Brown v. Consol. Rest. Operations, Inc.*, No. 3:12-00788, 2013 WL 4804780, at *7 (M.D. Tenn. Sept. 6, 2013).

Upon review of the record, and in the interest of judicial efficiency and economy, the court finds that the plaintiffs' requested forms of notice are reasonable. Accordingly, the court will order that the forms be distributed to potential class members by regular mail, email, by posting in the location in Caregiver's office locations where other labor and related notices are typically posted, and by enclosing the forms with the next paycheck of all currently employed potential class members.

In light of the court's decision to authorize notice through regular mail and email, it will require Caregivers to produce to the plaintiffs the names, last known mailing addresses, and email addresses for all putative class members. At this time, and in the interest of privacy, the court will not require Caregivers to disclose any additional identifying information for putative class members, including telephone numbers.

**III. Conclusion**

For the reasons set herein, the defendants' Motion to Dismiss will be denied.

The Motion for Collective Certification will be granted, and the court will (1) conditionally certify a collective action by a class defined as all present and former employees of Caregivers, Inc. in the Middle Tennessee area, who are or were employed as "caregivers" (and those performing similar tasks, whatever their job title) at any time from January 1, 2015, through the present; (2) approve the proposed Notice and Consent Form, as modified to reflect that potential class members must return the Consent Form to plaintiff's counsel within 90 days of the date that this Memorandum and accompanying Order are entered; (3) order Caregivers to provide the plaintiffs with the names, last known addresses, and email addresses of which it has

records for all putative class members within 7 days; and (4) direct distribution of the Notice and Consent Forms by means of first-class mail and email, as well as by posting the forms at Caregivers' office locations and by enclosing copies of the forms with the next regularly scheduled paycheck for still-employed potential class members.

An appropriate Order is entered herewith.

_____
ALETA A. TRAUGER
United States District Judge